# United States Court of Appeals for the Federal Circuit

---

**WINTHROP J. BLOCK, PATRICK M. BURNS,
BRENDA IWASYK,
DAVID M. JACOBS AND VERBORIE W. SHAW,**
*Petitioners,*

v.

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent.*

---

2010-7045

---

On petition for review pursuant to 38 U.S.C. Section 502.

---

Decided: April 14, 2011

---

STANLEY J. PANIKOWSKI, III, DLA Piper, LLP, of San Diego, California, argued for petitioners Of counsel on the brief were RICHARD V. SPATARO, JR. and. BARTON F. STICHMAN, National Veterans Legal Services Program, of Washington, DC.

TODD M. HUGHES, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent.

With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director. Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and RACHAEL T. SHENKMAN, Attorney, of United States Department of Veterans Affairs, of Washington, DC.

---

Before LOURIE, BRYSON, and PROST, *Circuit Judges.*

BRYSON, *Circuit Judge.*

This is an unusual case involving an effort to obtain judicial review of a Veterans' Administration publication that was issued in 1978, before this court was created, and has not been in effect since 1985. The publication concerned the processing of claims filed by veterans who were seeking to establish service connection for certain diseases that they claimed to have developed as a result of exposure to defoliants during their service in Vietnam. We hold that the petitioners' request for review of the publication is not within the jurisdiction of this court, and we therefore dismiss the petition.

I

During the Vietnam War, the U.S. government sprayed herbicides over portions of Vietnam to defoliate dense jungle areas. The most widely sprayed herbicide was known as Agent Orange, a name that referred to the orange stripes identifying the drums in which it was stored. Agent Orange contained dioxin, a toxic contaminant. The dioxin in Agent Orange, which was the by-product of the manufacture of an herbicide in Agent Orange commonly known as 2, 4, 5-T, could not be completely removed during the manufacturing process. In

1970, the Department of Defense announced that it would discontinue the military use of 2, 4, 5-T.

In 1978, Vietnam veterans began to file claims for disability benefits based on their exposure to Agent Orange. Veterans claimed that Agent Orange exposure resulted in a variety of disabilities, including cancer, liver dysfunction, neurological dysfunction, psychiatric problems, persistent joint pain, severe muscle spasms, chronic fatigue, and genetic damage manifested in birth defects to the veterans' children.

In response to those claims, the Veterans' Administration issued a "Ratings Practices and Procedures" document entitled "Disability – Vietnam Defoliant Exposure." The document, which is dated April 17, 1978, became known as the Agent Orange Program Guide. The Program Guide stated the following with respect to the connection between defoliant exposure and disabilities:

> Except for a skin condition known as chloracne, there are presently no firm data to incriminate the herbicides as causative agents of any other known category of disease or chronic symptom. However, a contaminant Dioxin, found in small quantities in defoliants is toxic.

The Program Guide also stated that no special procedures should be applied to such claims and that each claim should "receive a thorough development of all available evidence."

After issuing the Program Guide, the Veterans' Administration denied many claims alleging service connection between defoliant exposure and disabilities other than chloracne. Some of those denials cited language

from the Program Guide, including the "[e]xcept for . . . chloracne" language. Based on a review of Veterans' Administration records, the petitioners contend that only one percent of claims seeking service connection between defoliant exposure and a non-chloracne disability were allowed during the period following the publication of the Program Guide.

Petitioner Patrick M. Burns filed a claim in the fall of 1978 seeking service connection between defoliant exposure and folliculitis. In early 1979, the Veterans' Administration denied service connection to Mr. Burns based on the statement of a Veterans' Administration physician that "Agent Orange exposure is not considered as cause for recurrent folliculitis."

On May 31, 1979, Mr. Burns, along with several other veterans whose claims had been denied and several veterans' organizations, filed a complaint in the United States District Court for the District of Columbia. In that complaint, the plaintiffs contended that the Agent Orange Program Guide was a substantive rule that was issued in violation of the Administrative Procedure Act ("APA") because the Veterans' Administration did not publish it in the Federal Register and did not comply with the agency's notice-and-comment rulemaking provisions found in 38 C.F.R. § 1.12 (1979). The plaintiffs also alleged that the agency's reliance on the Program Guide without their knowledge violated their right to due process. They framed the case as a class action brought on behalf of a class consisting of more than 100,000 veterans whose claims had been or would be denied based on the Agent Orange Program Guide.

By the end of 1979, both sides had filed dispositive motions. The plaintiffs had filed a motion for summary

judgment and a motion for class certification. The defendants had filed a motion for judgment on the pleadings. The district court, however, did not rule on those motions. In 1990, the plaintiffs filed a motion for expedited consideration of the pending motions. Nonetheless, the district court took no action on the motions.

In the meantime, Congress enacted the Veterans' Dioxin and Radiation Exposure Compensation Standards Act ("the 1984 Act"), Pub. L. No. 98-542, 98 Stat. 2725 (1984), which resulted in a wholesale revision of the approach used by the Veterans' Administration to address claims based on exposure to Agent Orange. *See Haas v. Peake*, 525 F.3d 1168, 1175-77 (Fed. Cir. 2008). Following the promulgation of regulations required by the 1984 Act, the Agent Orange Program Guide ceased to be relevant to claims based on Agent Orange exposure. The petitioners continued to press their judicial review claim, however, out of concern that denials of claims during the period before the 1984 Act regulations were issued would be deemed final and would prejudice the claimants' ability to establish service connection for their conditions.

In 2005, a new attorney appeared for the plaintiffs. The remaining plaintiffs then filed a motion to substitute putative class representatives. The district court granted that motion, and petitioners Winthrop J. Block, Brenda Iwasyk, David M. Jacobs, and Verborie W. Shaw were added to the case in place of several veterans and veterans' organizations. The new named plaintiffs were veterans or survivors of veterans who had service connection claims for a non-chloracne disability based on exposure to defoliants denied between 1978 and 1985.

The case was reassigned to a new district judge in 2007. In 2008, the new judge ruled on the dispositive

motions that had been filed in 1979. The court held that the Agent Orange Program Guide was a general statement of policy and not a substantive rule. It therefore granted the government's motion for judgment on the pleadings and denied the plaintiffs' motions for summary judgment and class certification.

The plaintiffs appealed, but on appeal the D.C. Circuit held that the district court lacked jurisdiction based on section 102 of the Veterans' Judicial Review Act ("VJRA"), Pub. L. No. 100-687, § 102, 102 Stat. 4105, 4106 (1988), codified as amended at 38 U.S.C. § 502. That statute, which had been enacted 20 years earlier in 1988, vested this court with exclusive jurisdiction for APA procedural challenges to Veterans' Administration regulations. The D.C. Circuit concluded that section 502 would be applied to pre-existing claims because "[u]nder normal circumstances, application of a new jurisdictional statute 'takes away no substantive right, but simply changes the tribunal that is to hear the case.'" *White v. Shinseki*, No. 08-5161 (D.C. Cir. Apr. 7, 2009) (citation omitted). The court then vacated the district court's judgment and remanded the case to the district court with instructions to transfer it to this court pursuant to 28 U.S.C. § 1631. The court noted that the plaintiffs were "likely to have a strong argument for equitable tolling of the statute, particularly in light of the decade-long delay between the filing of their petition with the district court in 1979 and the [effective date of the Veterans' Judicial Review Act] in 1989" because the delay appeared not to be the fault of the plaintiffs. The D.C. Circuit recognized that this court might determine that it lacked jurisdiction but concluded that this court "is the only place where jurisdiction is conceivable."

The government filed a petition for rehearing. It argued that the case could not be transferred to this court under section 1631 because this court did not exist in 1979 and therefore was not a court "in which the action or appeal could have been brought at the time it was filed," as required by section 1631. The D.C. Circuit granted the petition for rehearing and entered an amended judgment vacating the district court's decision and ordering the district court to dismiss the case. *White v. Shinseki*, 329 F. App'x 285 (D.C. Cir. 2009). The plaintiffs filed a petition for certiorari with the Supreme Court, which was denied on November 30, 2009.

The petitioners filed this petition on January 29, 2010, more than 30 years after the initial complaint was filed in the district court. They contend that the Agent Orange Program Guide is a substantive rule created without notice and comment rulemaking and promulgated without publication in the Federal Register. They have not pressed the due process claim that was alleged in the original district court complaint.

## II

Challenges to regulations of the Department of Veterans Affairs ("DVA") that are brought in this court under 38 U.S.C. § 502 must be filed "within six years after the right of action first accrues." *Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1306-07 (Fed. Cir. 2008), quoting 28 U.S.C. § 2401(a). The petition in this case was filed in 2010, but any right of action accrued before the complaint was filed in 1979 when the Agent Orange Program Guide became final and was used in claim adjudication. *See id.* at 1307. Petitioners contend they are entitled to equitable tolling because their complaint in the district court was pending from the day it was filed in

1979 until 2009 when the Supreme Court denied their petition for certiorari in that case.

When the initial complaint was filed in 1979, no court had statutory authority to review Veterans' Administration regulations for compliance with APA procedural requirements, unless those regulations involved insurance, housing loans, or small business loans. That is because, at that time, 38 U.S.C. § 211(a) provided as follows:

> [With the aforementioned limited exceptions,] the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

In 1986, this court held that section 211(a) precluded judicial review of veterans' benefits regulations except in cases involving constitutional challenges. *Roberts v. Walters*, 792 F.2d 1109, 1111 (Fed. Cir. 1986).

At the time of our decision in *Roberts*, the D.C. Circuit had also held that section 211(a) precluded judicial review of Veterans' Administration regulations for compliance with APA procedural requirements. *Gott v. Walters*, 756 F.2d 902, 912 (D.C. Cir. 1985). Although the D.C. Circuit vacated that panel decision and granted rehearing *en banc*, the parties in the *Gott* case settled and the action was dismissed with no *en banc* resolution of the issue.

Other courts construed section 211(a) narrowly, but we have found no case before the enactment of the VJRA in 1988 construing section 211(a) to permit judicial review of Veterans' Administration regulations for compliance with the procedural requirements of the APA. The Supreme Court held that section 211(a) did not preclude judicial review of the constitutionality of a statute that provided education benefits to veterans but not to conscientious objectors, because the statute was an act of Congress rather than a decision of the Administrator. *Johnson v. Robison*, 415 U.S. 361, 367 (1974). Moreover, several circuits held that section 211(a) did not preclude judicial review of challenges to Veterans' Administration regulations based on claims that the regulations were unauthorized or substantively unlawful. *See, e.g.*, *Evergreen State Coll. v. Cleland*, 621 F.2d 1002 (9th Cir. 1980); *Univ. of Md. v. Cleland*, 621 F.2d 98 (4th Cir. 1980); *Merged Area X (Educ.) v. Cleland*, 604 F.2d 1075 (8th Cir. 1979); *Wayne State Univ. v. Cleland*, 590 F.2d 627 (6th Cir. 1978). Several circuits also held that federal courts had jurisdiction to hear due process challenges to the Veterans' Administration system for determining benefits. *See, e.g.*, *Marozsan v. United States*, 852 F.2d 1469 (7th Cir. 1988) (en banc); *Devine v. Cleland*, 616 F.2d 1080 (9th Cir. 1980). And the Supreme Court held that section 211(a) did not preclude a statutory challenge as long as the challenge arose from a statute enacted after section 211(a). *Traynor v. Turnage*, 485 U.S. 535, 541-45 (1988).

The fact that there was no case holding that federal courts could review Veterans' Administration regulations for compliance with APA procedural requirements is not surprising, as it was not until the enactment of the VJRA in 1988 that Congress authorized judicial review of procedural challenges to DVA regulations under the APA.

Before that time, including when the initial complaint in this case was filed in 1979, there was no statutory basis for any court to hear the petitioners' procedural challenges to the Agent Orange Program Guide. For that reason, the district court in which petitioners filed their challenge to the Agent Orange Program Guide did not have jurisdiction to address the procedural objections that they have now raised in this court. The filing of their district court action therefore cannot serve to toll the running of the statute of limitations. While the petitioners contend that the long delay in the resolution of their original lawsuit should not, in itself, create a time bar to relief, the long delay also cannot have the effect of creating a cause of action that did not exist either at the time the claim was originally filed or at any point during the ensuing six-year limitations period for civil actions brought against the United States in district courts, 28 U.S.C. § 2401.

We also conclude that the VJRA did not retroactively create a cause of action for a procedural challenge to Veterans' Administration regulations prior to 1988. When Congress gave this court exclusive jurisdiction to review DVA regulations, it provided no indication that the statute granting this court that reviewing authority should be extended retroactively. It is therefore unlikely that Congress intended to make this court's reviewing power applicable to regulations promulgated before the enactment of the VJRA.[1]  *See Landgraf v. USI Film*

---

[1]  It is particularly unlikely that Congress intended our jurisdiction to extend retroactively inasmuch as the VJRA not only provided for judicial review of procedural challenges to DVA regulations for the first time, but also altered the substantive requirements of the APA as applied to the DVA regulations governing benefits. In section 102(a)(1) of the VJRA, codified as amended at 38

*Prods.*, 511 U.S. 244, 264 (1994) ("congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result"), quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

In any event, even if Congress intended our reviewing authority under section 502 to be retroactive in some instances, it is quite clear that Congress did not intend to exempt actions under section 502 from the general six-year statute of limitations in 28 U.S.C. § 2401 for actions against the United States, and we have so held. *See Preminger*, 517 F.3d at 1307. Thus, this court lacks jurisdiction over the petition in this case unless the limitations period was tolled, either equitably or legally, by the earlier filing in the district court. And because no court had jurisdiction over the petitioners' procedural challenge to the Agent Orange Program Guide, the district court filing could not toll the running of the limitations period under any theory of legal or equitable tolling to which the petitioners have directed us.

---

U.S.C. § 501(d), Congress provided that the exception to the APA's procedural requirements for rulemaking relating to loans, grants, or benefits, *see* 5 U.S.C. § 553(a)(2), would no longer apply to DVA regulations.

To be sure, before the enactment of the VJRA the Veterans' Administration adopted a regulation that made the notice-and-comment requirements of the APA applicable to the agency's issuance of rules and regulations relating to benefits, with certain exceptions. *Public Participation in Regulatory Development*, 37 Fed. Reg. 7157 (Apr. 11, 1972). As the panel opinion of the D.C. Circuit in the *Gott* case explained, however, the agency's decision to make APA procedures generally applicable to its rulemaking proceedings did not affect the preclusion of judicial review by section 211(a). *See Gott*, 756 F.2d at 904 n.2, 916.

We emphasize the narrow scope of our holding. We do not address the question whether 28 U.S.C. § 2401 is subject to equitable tolling. Nor do we address whether the limitations period would be subject to tolling if the procedural challenge to the Agent Orange Program Guide had been within the district court's jurisdiction when the complaint was filed or at any time thereafter. We hold only that if a claim is filed outside the statute of limitations, the claim does not become timely simply because it was previously filed in a different court, at a time when no court had jurisdiction over the subject matter of the claim.

No costs.

**DISMISSED**